## GEORGIANA S. WYATT v. JAMES R. WYATT ET AL.

1. FRAUDULENT CONVEYANCES.  *Good between parties.*

    A deed is valid as between the parties, although executed with intent to defraud the creditors of the grantor.

2. COTENANTS.  *Mortgage.  Foreclosure.  Purchase by tenant.  Heirs of purchaser.*

    A tenant in common of land subject to a mortgage cannot defeat the rights of his cotenants by purchasing at a sale foreclosing the mortgage, and his heirs take at his death no greater right than he had in the land.

3. HUSBAND AND WIFE.  *Statute of limitations.  Code 1892, § 2737.*

    The statute of limitations bars a wife's causes of action against her husband, as if they were unmarried.

4. MARRIED WOMEN.  *Coverture.  Code 1880, § 1167, Constitution 1890, sec. 94.  Code 1892, § 2289.  Contract.  Relinquishment of rights in husband's estate.  Consideration.*

    Under code 1880, § 1167, constitution 1890, sec. 94, and code 1892, § 2289, emancipating married women from all disability because of cover-

ture, a contract between a husband and wife, made upon sufficient consideration, by which the wife relinquished all claims against her husband's estate, is valid, and when she receives probably more under the contract than she would as a distributee of the estate, no question can be raised as to the sufficiency of the consideration.

FROM the chancery court of Holmes county.

HON. STONE DEAVOURS, chancellor.

Mrs. Wyatt, appellant, was complainant in the court below; James R. Wyatt and others, appellees, were defendants there. From a decree in defendants' favor the complainant appealed to the supreme court. The opinion states the case.

*W. L. Dwyer,* for appellant.

The receipt and appropriation by the husband to his own use of the property of the wife, which constituted him her debtor, is without limit in point of time on her right to sue and recover, except as to one year's interest. This right is given and controlled wholly by § 2292 of the code of 1892, and not the general statute of limitations, and is a plain and well settled exception to the latter.

This provision first appears in our laws, substantially as now, in the code of 1857, art. 28, p. 337.

It was re-enacted in the code of 1871 as it now appears, with scarcely the change of a word or letter.

These provisions were construed by the court in *Hill* v. *Bugg,* 52 Miss., 397, which was only overruled in part, and *Thomson* v. *Hester,* 55 Miss., 656 (see also *Kaufman* v. *Whitney,* 50 Miss., 111), and held unqualifiedly to be the only limitation on the wife, the limitation extending only to rents and interest, and not affecting the corpus of her debt.

This section was included in the code of 1880, as § 1176, and *Thomson* v. *Hester,* 55 Miss., 656, cited as explanatory of that section, and was re-enacted by the legislature as therein construed.

It was re-enacted in the code of 1892 as it stood in that of 1880, as § 2292, and both *Thomson* v. *Hester* and *Hill* v. *Bugg*, as explained, were cited as explaining it.

In both the code of 1880 and of 1892, this was a contemporary construction of its meaning, and clearly took the right of the wife against her husband, where he had received and appropriated her property to his use as F. A. Wyatt did, out of the statute of limitations.

This is the settled doctrine of our court for another reason. Where a statute which has been construed by the supreme court, is on a codification of the laws re-enacted without material change, and the same question again arises, the construction will be controlling. *Shotwell* v. *Covington*, 69 Miss., 735; *Wetherbee* v. *Roots*, 72 Miss., 355.

Also if sec. 94 of the constitution of 1890 has any bearing on this particular question, the contemporaneous construction by the legislature of this provision would also control. *Chrisman* v. *Brookhaven*, 70 Miss., 478.

To create the relation of debtor and creditor between husband and wife, neither writings, evidences of debt, nor contract, express or implied, are required. The law itself creates the relation from the receipt and appropriation by the husband of her property. The same act in any other than the husband would constitute a tort, not a debt.

The permission given the wife to sue by the statute of 1880, would not of itself start the statute of limitations running, being wholly permissive.

If the debt of Mrs. Wyatt, the appellant, was not barred, then the writing purporting to relinquish her interest in her husband's estate is without consideration, is *nudum pactum* and in no sense binding on appellant, and the decree appealed from should be reversed.

The deed of trust to Davis, under which the land was sold, and purchased by Wyatt, was a valid and subsisting encumbrance on the land both at the time of the purchase by Wyatt,

and at the death of Mrs. L. A. Wyatt, their mother, through whom defendants, appellees, claim title. If appellees are permitted by the court to treat the purchase of F. A. Wyatt at the trustee sale, as in trust for them, then they should be compelled to contribute four-fifths of said incumbrance, paid off by Wyatt to his estate. They should not be allowed to take the land, discharged of the incumbrance, especially since the the right of the widow has accrued thereto. Her standing in a court of equity ought, at least, to be as good as theirs.

*Monroe McClurg*, on same side.

The general statute of· limitations found in § 2737, *et seq.*, of the code must be construed in connection with § 2292 of the code which deals especially with a limitation of a claim by the wife against the husband ̇for rents, profits and income of her separate property.

Does the general statute of limitations apply to husband and wife ? The argument for an affirmative answer does not reach beyond those statutes which have disenthralled the wife from fictions of law and technical bondage. Giving her power and dominion over her separate estate, and authority to sue her husband was never intended ̇to destroy her queenly estate as wife. Public policy forbids. The home of the two is still the central idea in the hope for the preservation of democratic principles and American institutions, and is not to be destroyed by such construction. The house must not be divided against itself, especially where the interests of no one outside of its cover is involved. So far as I have been able to ascertain, this court, nor any other court, has not held that the general statute of limitations applies to husband and wife. The engrafting of exceptions spoken of in the law has reference to its application as between strangers. It is not a question of ''exception to the statute'' in its application to husband and wife, but purely a question of construction. Transactions between husband and wife, none other being interested save the

heirs, has always been a sacred matter in the eyes of the law with special laws governing matters involving this relation. Statutes of course govern, but in the absence of statutes the common law principles control. Who can imagine a worse home destroyer or a wider avenue to evil and fraud, than a rule compelling husband and wife to sue each other? The statute does not require it; it is purely permissive without a statutory bar. Who is there to complain in a case like this? The heirs? They wear the shoes of the father. So it is, we have a general statute of the limitation of actions that, because of public policy, does not apply in a cause in a court of equity where the wife claims reimbursement out of the husband's estate for money, not lent him or used by him with her express consent, but where he took notes for her property, negotiated them and used them, without her consent, and without any promise to repay her "on demand" or at any other "fixed time."

This court cannot shut its eyes to the equitable complaint of the wife in this case. Looking to the history of our logical legislation on this subject, the court cannot fail to conclude that it was not intended in divorcing the wife from her legal disabilities under the law, to otherwise put her in the attitude of a stranger with reference to her claims against her husband, for her money or estate by him appropriated to his personal use without any sort of contract or agreement with her. Let me repeat; it is not engrafting an exception upon a statute that fixes the time within which a suit may be brought after the right of action has accrued. It is merely a declaration of what the law is in such state of case. As before stated, it is rather a construction of law in such case.

*H. H. Elmore and Noel & Pepper,* for appellees.

The appellant contends that the contract by which she relinquished her claim to share in her husband's estate is void; first, because it is against public policy, and second, because it is without valuable consideration.

In discussing illegal contracts the supreme court in *Fairley* v. *Fairley*, 34 Miss., 18, says: "It is not what the law permits." In *Wilkins* v. *Riley*, 47 Miss., 313, it is further said, "It is a rule that every presumption of law is in favor of the legality of a contract, and it is incumbent on a party alleging its illegality to show everything to render it so."

This court has never said that public policy opposes contracts of this kind. The cases which have been before the court involving that question, arose before the removal of the disabilities of the married woman, and it was uniformly held in accordance with the then existing state of the law that she was not bound, because in only a few instances could she bind herself by contract. But when the contract was made with the husband through the medium of a trustee, acting for the wife, then the husband was bound by the undertakings, and the trustee by his, but not the wife, because of her disability, not on account of the opposition of public policy. "A deed of separation made between a husband and wife alone is void, and valid when made through the agency of a trustee acting for the wife, and when so made binding alone upon the husband and trustee." *Stephenson* v. *Osborne*, 41 Miss., 119; *Tourney* v. *Sinclair*, 4 Miss., 327; *Carter* v. *Carter*, 22 Miss., 59.

There being no longer any need of a trustee in those states where married women have been emancipated, a trustee is no longer required. 1 Beach. Mod. Eq. Jur., 198.

Consideration. "Any benefit, however slight, resulting to the promisor by the act of the promisee, though there may be no adequacy in point or value, or any loss, trouble or inconvenience, though trifling, but not wholly worthless in law and in fact, sustained by the promise, at the instance of the promisor, and although the promisee obtain no advantage or benefit from the stipulated act, is a sufficient consideration." *Byrne* v. *Cummings*, 41 Miss., 192.

"The law does not look to the amount of the consideration

.to uphold a contract so that there is a consideration, though trivial.'' *Magee* v. *Catchings*, 33 Miss., 690.

The execution of the notes for the amount of principal and interest of the $1,166.66 debt, the notes to draw ten per cent interest instead of six per cent, the rate for the old debt, was more advantageous to the promisor, and more detrimental to the promisee than the original agreement to pay $1,166.66 at six per cent interest. It increases the amount drawing interest ·from $1,166.66 to $1,757.00; it raises the rate of interest from six per cent to ten per cent. The general income amounts from $69.00 to $175.00, the promisor deriving a benefit of $106.00 annually and the promisee suffering a corresponding loss and detriment. This consideration more than meets the requirements of the definition.

''A conveyance from husband to wife reciting legal consideration is *prima facie* valid, and if attacked must be overthrown by affirmative evidence of fraud.'' *Virden* v. *Dwyer*, 78 Miss., 763.

''A tenant in common who purchases the joint estate under a deed of trust, will hold the same as trustee for all the tenants. Adult cotenants with notice must elect within a reasonable time to hold the purchase as a trustee as against *bona fide* purchasers.'' *Smith* v. *Mc Whorter*, 74 Miss., 400; *Snider* v. *Woodenware Co.*, 74 Miss., 353.

Our statute expressly declares that all disabilities of married women are removed; that they and their husbands can sue each other; and that legal rights and liabilities are unaffected by marriage. To the statute there is no qualification except the few made for the protection of third parties. At common law husband and wife could not sue each other during coverture, and of course limitation did not run. In some states, Louisiana, Texas and California, marriage creates community property rights. Nothing of coverture or community rights or disabilities exists in our state. Its public policy is voiced by its legislation. Resurrection of stale claims are as fraught

with evil within as without the family circle. In fact, when business relations exist, prompt settlements are nowhere more essential to harmony than among those closely allied. Our statute, when it makes one year the limit of a husband's disability for use of his wife's income, proclaims this principle, leaving other disabilities to the usual statutory bar.

Courts do not create exceptions to statutory bar. "The doctrine is now very fully established, that implied and equitable exceptions are not to be engrafted upon the statute of limitations, and where the statute has not made the exception in express words in the statute, the court cannot allow them on the ground that they are within the reason or equity of the statute. *Dizier* v. *Ellis*, 28 Miss., 730.

In dealing with limitations, the court has held: "It is not the province of courts to engraft exceptions upon statutes, or to impair their practical utility by the introduction of refinements." *Ingraham* v. *Regan*, 23 Miss., 214; *Smith* v. *Westmoreland*, 20 Miss., 663; *Butler* v. *Craig*, 27 Miss., 628.

Argued orally by *A. M. Pepper*, for appellee.

TERRAL, J., delivered the opinion of the court.

In January, 1899, F. A. Wyatt died intestate, leaving real estate, the title to which was in his own name, aggregating about 1,700 acres of land, known as "Oregon Plantation"; leaving also, as his heirs, his widow [appellant], and four children by a former wife. Appellant brought suit in the nature of a proceeding against appellees for the partition of said plantation, and appellees set up in bar of her recovery of any part of said plantation a renunciation and waiver of any claim thereto executed by her to her husband in consideration of two promissory notes made by him to her aggregating $1,698.66, bearing 10 per cent, the contents of which had been duly paid to her. The chancellor, after hearing all the proofs in the case, decided the issue in favor of appellees.

The record discloses that in April, 1882, the deceased, F. A. Wyatt, conveyed the Oregon plantation to his then wife, Mrs. Lydia A. Wyatt, which was then under deed of trust to Hooker to secure Dr. Davis a large sum of money. Shortly thereafter Mrs. Lydia Wyatt departed this life intestate, leaving her husband and her four children, the heirs of her estate. In 1887 F. A. Wyatt, for the purpose, it seems, of becoming a qualified bondsman of his brother, who had been elected sheriff of Holmes County, secured a foreclosure of said deed of trust, and at the sale became the purchaser, and the title was made to him, and it so remained at his death. Mrs Georgiana S. Wyatt was married to F. A. Wyatt in January, 1889, and soon thereafter he received of her estate about the sum of $1,166.66, which he never paid to her, and which in June, 1898, was due much more than six years. On the 20th of June, 1898, Wyatt and his wife agreed to separate; and in consideration of the execution by him to her of his two promissory notes for the sum of $849.33 each, bearing date January 20th preceding, with 10 per cent interest from that date, she executed her release of all her right and interest in and to the property owned by said F. A. Wyatt, or which he might own at his death.

That Mrs. Wyatt, if her release was void, is entitled only to the one-fifth interest in the one-fifth interest of her husband in the Oregon plantation, is, we think, clear from a statement of the facts. The legal title to the Oregon plantation at the death of Lydia Wyatt was in her, and upon her death it descended to her husband and children in equal parts, and they became co-tenants thereof. For, though a question was attempted to be made that her title to the plantation was bad, because it was alleged that Wyatt at the time of its execution was a surety on the bond of the sheriff of Holmes County, and made the deed to avoid the effect of his suretyship, yet it is obvious that the conveyance, as between Mr. and Mrs. Wyatt, was unaffected by such purpose, and was unimpeachable between them. The state of Mississippi, and it only, might have had ground of com ·

plaint, so far as it affected her rights in the matter. The purchase, therefore, of the Oregon plantation by F. A. Wyatt, one of the cotenants, at the sale of it under the trust deed, did not give him a greater right or interest in it than he had before the purchase. *Smith* v. *Mc Whorter*, 74 Miss., 400 (20 South., 870).

It must also be obvious that whatever debt F. A. Wyatt owed his wife, Georgiana S. Wyatt was in July, 1898, barred by the statute of limitations, because the wife is not excepted from its operations by any express provision of the code, and courts are not at liberty to ingraft any exceptions upon it. *Dozier* v. *Ellis*, 28 Miss., 730; *Massey* v. *Rimmer*, 69 Miss. 667 (13 South., 832). If the legislation on this subject was now as it was when *Thomson* v. *Hester*, 55 Miss., 656, was decided, the statute of limitations would not bar the claim of the wife; but since then a great revolution on this subject has been effected here by the code of 1880, the constitution of 1890, and the code of 1892.

It must therefore follow that the two notes for $849.33 each, given by F. A. Wyatt to Mrs. Wyatt, if in fact they were a fair and adequate consideration for the release of her interest in his estate, were also sufficient to support the release executed by her. For though Mrs. Wyatt claims that the money represented by the notes was paid her in discharge of her claim against her husband, yet it is perfectly manifest that Wyatt regarded and treated them as a consideration of her release of all claim to any part of his estate; and, being barred by limitation, he had a right so to regard them, and the law justified him in that conclusion. That a family settlement or other similar arrangement like the one before us is valid, when based upon an adequate and fair consideration, is supported, we think, by authorities. 2 Pom. Eq. Jur. sec. 953; *Garver* v. *Miller*, 16 Ohio St., 527; *Daniels* v. *Daniels*, 9 Colo., 133 (10 Pac., 657); *Switzer* v. *Switzer*, 26 Grat., 574. And we see no ground to question the finding and decision of the chancellor in this regard;

for the sum paid Mrs. Wyatt, upon the evidence contained in this record, is probably greater than what she would have received as an heir of Wyatt's estate.

Since the adoption of the code of 1880, the constitution of 1890, and the code of 1892, effecting the complete emancipation of married women, and authorizing every character of suit between husband and wife, the validity of a contract between them cannot be questioned in judicial tribunals of this state; and such contracts may be enforced by one against the other. *McGregor* v. *McGregor*, 20 Q. B. Div., 529; *Wilson* v. *Wilson*, 1 H. L. Cas., 538; *Besant* v. *Wood*, 12 Ch. Div. 605. The unrestricted right of the wife to sue the husband, secured to her by the constitution and code, would be lame and ineffectual unless she could make all contracts of whatever kind, with her husband.

*Affirmed.*